Bruce J. TROMBLEY and
Ryan Sukaskas

v.

**BANK OF AMERICA CORPORATION.**

**Civil No. 08–cv–456–JD.**

United States District Court,
D. Rhode Island.

Dec. 23, 2009.

Peter N. Wasylyk, Attorney at Law, Providence, RI, Michael J. Quirk, Williams Cuker Berezofsky, Philadelphia, PA, for Bruce J. Trombley, Ryan Sukaskas.

David A. Searles, Donovan Searles, LLC, Philadelphia, PA, for Bruce J. Trombley.

David J. Fioccola, Mark P. Ladner, Morrison & Foerster, LLP, New York, NY, Robert G. Flanders, Jr., Hinckley, Allen & Snyder LLP, Providence, RI, for Bank of America Corporation.

## ORDER

JOSEPH A. DiCLERICO, JR., District Judge.

Bruce J. Trombley and Ryan Sukaskas brought a putative class action, alleging that the Bank of America Corporation ("BAC") breached its credit card agreement with them and violated the Truth in Lending Act, 15 U.S.C. §§ 1601, et seq., and Regulation Z, codified at 12 C.F.R. Part 226. The plaintiffs also sought a declaratory judgment that the credit card agreements are unconscionable, but the parties later stipulated to the dismissal of that claim without prejudice. BAC moves to dismiss the plaintiffs' two remaining claims, and the plaintiffs object.[1]

### Standard of Review

In assessing a complaint for purposes of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court accepts all well-pleaded facts in the complaint as true and draws reasonable inferences in the plaintiffs' favor. *Sutliffe v. Epping Sch. Dist.*, 584 F.3d 314, 325 (1st Cir.2009). To avoid dismissal, the plaintiff must allege "a plausible entitlement to relief" meaning "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Plausibility does not mean probability but is more than a mere possibility. *Ashcroft v. Iqbal*, —— U.S.

——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

BAC submitted the affidavit of Nancy J. Miller, the operational risk manager for its card services division, with copies of the plaintiffs' credit card agreements, and additional information about the agreements. BAC also submitted the affidavit of Denise M. Augustin, a senior vice president in the customer strategies division, with redacted copies of the plaintiffs' credit card account statements for October and November, 2007. BAC filed a reply and submitted the affidavit of Stephanie A. Hamilton, a senior vice president in the customer strategies division, with a copy of the "Online Banking and Transfers Service Agreement and Electronic Disclosure, effective June 10, 2007." The plaintiffs have not objected to the affidavits or the materials introduced by the affidavits, and they discussed the credit card agreements and statements in their amended complaint and their response to the motion to dismiss.

Federal Rule of Civil Procedure 12(d) provides as follows: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Certain materials, however, are not considered to be extrinsic to the pleadings, including documents whose authenticity is not disputed by the parties and documents central to the plaintiffs' claims. *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir.2009).

The agreements and credit card statements submitted by BAC as exhibits to the affidavits filed in support of its motion and reply are documents whose authenticity is not disputed and that are central to the plaintiffs' claims. The agreements and

---

**1.** BAC states in a footnote that it is not the appropriate defendant but did not seek relief on that basis.

statements will be considered for purposes of deciding BAC's motion to dismiss. The content of the affidavits submitted by BAC, as distinguished from the undisputed exhibits to the affidavits, will not be considered.[2] The court will consider the statements and agreements submitted by BAC as exhibits to the affidavits but will not consider the content of the affidavits themselves. Therefore, the motion need not be converted to a motion for summary judgment.

### Background

The plaintiffs allege that they each have a BAC credit card. Bruce Trombley states that in October of 2007, his minimum payment was due by Saturday, October 27, 2007. That Saturday he went to a BAC branch, in Swansea, Massachusetts, to make the payment which was accepted at the bank. When he received his November statement, however, BAC had imposed a late fee of $39.00 although he had made the payment at the branch bank on the due date. In addition, BAC notified him that because of his late payment, his promotional interest rate was cancelled.

Ryan Sukaskas alleges that on the due date for his payment, November 24, 2007, he attempted to make his payment through BAC's online payment system. He was informed, however, that BAC would not credit the payment on that day because it was the due date. To avoid a late payment, Sukaskas made the payment by telephone and incurred a $15 fee for a telephone payment that was assessed on his next bill.

### Discussion

In support of its motion to dismiss, BAC contends that it did not breach the credit card agreements because its actions are permitted under the terms of the agreements. BAC also contends that because the Truth in Lending Act and Regulation Z allow it to credit nonconforming payments within five days of receipt, no violation occurred. The plaintiffs respond that BAC's actions breached the agreements and the implied covenant of good faith and fair dealing. The plaintiffs argue that BAC's actions violate the Truth in Lending Act and Regulation Z by making it difficult for cardholders to make payments on the due dates and by failing to communicate any requirements for making such payments.

### A. Breach of Contract

■ "In order to survive a motion to dismiss for failure to state a breach of contract claim, the plaintiff must demonstrate: first, the existence of the contract . . .; second, the breach of an obligation imposed by the contract; and third, the resultant damage to the plaintiff." [3] *VLIW Tech., LLC v. Hewlett–Packard Co.*, 840 A.2d 606, 612 (Del.2003). "Under Delaware law, the proper interpretation of language in a contract is a question of law." *Alliance Data Sys. Corp. v. Blackstone Capital Partners V L.P.*, 963 A.2d 746, 759–60 (Del.Ch.2009). Every contract governed by Delaware law includes an implied covenant of good faith and fair dealing.[4] *Airborne Health Inc. v. Squid Soap, LP*, 984 A.2d 126, 145–46 (Del.Ch.2009); *see also, e.g., Cole v. State*, 922 A.2d 354, 359–60 (Del.2005); *Lillis v. AT & T Corp.*, 904 A.2d 325, 334 n. 34 (Del.Ch.2006); *Dave Greytak Enters., Inc. v. Mazda Motors of Am., Inc.*, 622 A.2d 14, 22 (Del.Ch. 1992); *Dow Chem. Can. Inc. v. HRD*

---

**2.** Citations to the credit card agreements and statements will reference the affidavit and exhibit number as filed by BAC.

**3.** The parties agree that Delaware law governs the credit card agreements.

**4.** To the extent BAC argues that under Delaware law the implied covenant of good faith and fair dealing applies only to employment and insurance agreements, it is mistaken, as the cases cited above demonstrate.

*Corp.*, 656 F.Supp.2d 427, 444–45 (D.Del. 2009).

### 1. *Breach of Terms of the Agreement*

■ The plaintiffs contend that BAC breached its credit card agreements with them by refusing to credit the payments they tendered on the due dates. Trombley paid at a BAC branch on the due date, but his payment was not credited that day, which caused him to incur a late fee and to lose his promotional interest rate, and Sukaskas tried to pay on the due date through BAC's online payment option, which would not accept the payment, causing him to incur a fee to pay by telephone. BAC responds that its actions comply with the terms of the agreements.

The credit card agreement, governing both plaintiffs' accounts, states that a cardholder may pay the total outstanding credit balance at any time, that a cardholder must pay at least the total minimum payment due each month by the payment due date, and that certain terms apply for crediting payments to a cardholder's account. The agreement states that payments will be credited as follows:

> We credit your payments as of the date received, if the payment is (1) received by 5 p.m. (Eastern Time); (2) received at the address shown in the upper left-hand corner of the front of your monthly statement; (3) paid with a check drawn in U.S. dollars on a U.S. financial institution or a U.S. dollar money order, and (4) sent in the return envelope with only the top portion of your statement accompanying it. Payments received after 5 p.m. on any day including the Payment Due Date, but that otherwise meet the

above requirements, will be credited as of the next day. Credit for any other payments may be delayed up to five days.

Miller Aff. Ex. 1, ¶ 24. The plaintiffs rely on the first phrase of the quoted provision to argue that BAC must credit payments made on the due date. BAC contends that the agreement allows it five days to credit payments that are not made in accordance with the four stated requirements.[5]

By its plain terms, the referenced provision states that BAC will credit payments on the date received only if four requirements are met. The requirements are that the payment must be sent through the mail in the return envelope, must enclose only the top portion of the statement, must use the specified type of check or money order, and must reach BAC at the specified address before 5 p.m. Eastern Time. Payments that do not conform to those requirements are subject to the five-day crediting period. In other words, the credit card agreement specifies a particular means for making a payment that will be credited on the day it is received and gives BAC discretion to credit all nonconforming payments within a five-day period following the date the payment was received.

Neither Trombley's payment at a BAC branch nor Sukaskas's attempt to pay online conformed to the requirements provided in the agreement. Therefore, BAC did not breach the terms of its credit card agreement by failing to credit Trombley's payment at the branch and by refusing Sukaskas's online payment on the dates the payments were tendered.[6]

---

**5.** The address provided on the monthly statement is:

Bank of America
P.O. Box 15719
Wilmington, DE 1988605719

**6.** To the extent Sukaskas intended to argue that he was not notified that online payments made on a nonbusiness day would not be credited until the next business day, as BAC characterizes his opposition, that theory fails based on the notification provision in the Online Banking and Transfers Service Agree-

### 2. *Implied Covenant of Good Faith and Fair Dealing*

Alternatively, the plaintiffs allege that BAC violated the implied covenant of good faith and fair dealing by using the five-day period to delay Trombley's timely payment for the purpose of accruing interest and late fees. Similarly, the plaintiffs allege that BAC violated the implied covenant of good faith and fair dealing by refusing Sukaskas's timely payment offered through the online option. BAC responds that because it acted within the express terms of its agreements, the implied covenant of good faith and fair dealing is inapplicable.

■■■ The implied covenant of good faith and fair dealing, under Delaware law, "requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain." *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del.2005) (internal quotation marks omitted). A plaintiff "generally cannot base a claim for breach of the implied covenant on conduct authorized by the terms of the agreement." *Id.* When the contract invests one party with discretionary power to make a decision that affects the other's benefit from their relationship or discretion to determine whether a condition has been met, however, the party exercising that discretion is obligated to do so in good faith. *Hilco Capital, LP v. Fed. Ins. Co.*, 978 A.2d 174, 178 (Del.2009) (construing Missouri law but stating that the law is the same in Delaware); *Gilbert v. El Paso Co.*, 490 A.2d 1050, 1055 (Del.Ch.1984). Therefore, "[a] party may breach the implied covenant of good faith and fair dealing without violating an express term of the contract [because] [t]he implied covenant is designed to protect the spirit of an agreement when, without violating an express term of the agreement, one side uses oppressive or underhanded tactics to deny the other side the fruits of the parties' bargain." *PAMI–LEMB I Inc. v. EMB–NHC, L.L.C.*, 857 A.2d 998, 1016 (Del.Ch. 2004).

■■■ In this case, the plaintiffs allege that BAC used the five-day period provided in the agreement in bad faith to delay or prevent timely payments for the purpose of accruing interest and fees. That theory plausibly applies to the alleged circumstances of Trombley's payment, where he made his payment on the due date at a BAC branch, but BAC chose to delay crediting the payment, which resulted in a late fee and an increase in Trombley's interest rate. While there may be good faith explanations for that occurrence, at the motion to dismiss stage, the court only considers the allegations and resolves inferences in the plaintiffs' favor. Under that standard, Trombley states a claim that BAC breached the implied covenant.

■■■ Sukaskas argues that BAC's policy of not crediting online payments made on a nonbusiness day until the next business day was unreasonable and imposed in bad faith to force its cardholders to use the telephone service for a fee. At this juncture, Sukaskas need only state a plausible basis for his claim that BAC breached the implied covenant of good faith and fair dealing, which he has done. Therefore, his breach of contract claim, based on the implied covenant of good faith and fair dealing, survives BAC's motion to dismiss.

ment and Electronic Disclosure. Hamilton Aff. Ex. 1, Part III, B "Online Banking Bill Payment Processing."

## B. *Truth in Lending Act*

The plaintiffs allege in their complaint that BAC is violating the Truth in Lending Act ("TILA"), 15 U.S.C. § 1637(b)(9), by failing to disclose "that the 'minimum payment' amount does not include all fees that [BAC] imposes" and is violating TILA and Regulation Z, 12 C.F.R. § 226.10, by failing to credit the plaintiffs' timely payments on the day they were tendered without imposing fees and charges. In its *motion to dismiss,* BAC contends that its practices do not violate TILA because § 226.10 expressly permits creditors to impose requirements for making payments and to delay crediting nonconforming payments for up to five days.[7] The plaintiffs respond that BAC's agreement does not communicate requirements for making payments, as provided in § 226.10, and that the payment requirements are unreasonable and arbitrary.

The Federal Reserve Board established certain rules and requirements to implement TILA, which are codified as Regulation Z at 12 C.F.R. Part 226. Section 226.10 addresses prompt crediting of credit card payments. "If a creditor specifies, on or with the periodic statement, requirements for the consumer to follow in making payments, but accepts a payment that does not conform to the requirements, the creditor shall credit the payment within 5 days of receipt." § 226.10(b).

BAC's credit card periodic statements include the same four payment requirements as the provision in paragraph 24 of the credit card agreement.[8] The plaintiffs argue that the statements merely indicate that compliance with the four listed requirements is sufficient, but not necessary, to have payments credited on the day they are received. The plaintiffs further argue that because the statements provide that nonconforming payments *may* be delayed for up to five days, rather than providing that nonconforming payments *will* be delayed for up to five days, credit card holders are not notified that nonconforming payments will be not be credited on the day received.

The plaintiffs' interpretation of the payment crediting provision is not persuasive. The provision states that BAC credits a payment on the day received "if the payment" meets the four listed conditions. The provision also refers to the four listed conditions as "requirements". As written, the provision provides that a cardholder must comply with the four listed conditions before BAC is obligated to credit a payment on the day it is received. The provision that nonconforming payments may be delayed for up to five days gives BAC discretion about when it credits nonconforming payments but does not affect the mandatory nature of the stated conditions for guaranteed same-day credit. There-

---

7.  BAC does not appear to challenge the plaintiffs' claim that BAC is violating § 1637(b)(9) by failing to disclose that the stated minimum payment does not include all of the fees that BAC imposes. *See* Am. Compl. ¶ 35.

8.  "We credit payments as of the day received, if the payment is 1) received by 5 p.m. (Eastern Time), 2) received at the address shown in the bottom left-hand corner of the front of this statement, 3) paid with a check drawn in U.S. dollars on a U.S. financial institution or a U.S. dollar money order, and 4) sent in the enclosed return envelope with only the bottom portion of this statement accompanying it. Payments received after 5 p.m. on any day including the Payment Due Date, but that otherwise meet the above requirements, will be credited as of the next day.... Credit for any other payments may be delayed up to five days." Augustin Aff., Exs. 1 & 2, Statements p. 2. The discrepancies between the card holder agreement and the periodic statement with respect to the location of the address and which portion of the statement must be returned are not material to this case.

fore, BAC's payment crediting provision complies with § 226.10(b).

The plaintiffs also argue that the four conditions BAC imposes for same-day crediting of payments violate TILA because they are unreasonable and arbitrary. In support, the plaintiffs cite the Official Staff Commentary to § 226.10(b), which states that "[r]equirements for making payments must be reasonable; it should not be difficult for most consumers to make conforming payments." Supp. I to Part 226, § 226.10(b). Just above that statement, however, the Official Staff Commentary provides examples of acceptable requirements for same-day payment crediting, which include "requiring that payments be accompanied by . . . payment stub," "[s]etting a cut-off hour for payment to be received," "[s]pecifying that payment is to be made in U.S. dollars," and "[s]pecifying one particular address for receiving payments, such as a post office box." *Id.*

The plaintiffs state that BAC "accepts conforming payments in branch locations, online and by telephone. However, it will only credit telephone payments (for a fee) on the **due date,** but will not credit payments made at a branch location or online on the due date." Pl. Obj. at 14. The plaintiffs misunderstand the process. Under the terms of the agreements, only payments made by mail to the post office box address in Wilmington, Delaware, which appears on the credit card statements, are conforming payments that will be credited on the date the payment is received, including the due date. Payments made at a branch, online, or by telephone do *not* conform to the requirements of the agreement. Therefore, the distinction the plaintiffs attempt to make is based on a faulty premise about what constitutes a conforming payment.

In addition, the Official Staff Commentary to § 226.10(b) suggests the type of requirements for same-day payment crediting that BAC uses. Because BAC uses the suggested payment requirements in its agreements, the plaintiffs' argument that the requirements are unreasonable fails.

The plaintiffs' allegations that BAC is violating TILA and § 226.10 by failing to credit the plaintiffs' timely payments on the day they were tendered without imposing fees and charges does not state a viable claim. That claim in Count II is dismissed. The plaintiffs' claim that BAC is violating TILA, 15 U.S.C. § 1637(b)(9), by failing to disclose "that the 'minimum payment' amount does not include all fees that [BAC] imposes" was not challenged in BAC's motion to dismiss and therefore is not addressed here.

*Conclusion*

For the foregoing reasons, the defendant's motion to dismiss (document no. 39) is granted to the extent that the plaintiffs' direct breach of contract claim in Count I is dismissed and the plaintiffs' TILA claim based on § 226.10 in Count II is dismissed. The claims remaining in this case are breach of the implied covenant of good faith and fair dealing in Count I and violation of TILA, § 1637(b)(9), in Count II.

The defendant's answer is due fourteen days from the date of this order. Fed. R.Civ.P. 12(a)(4)(A).

SO ORDERED.