HILCO CAPITAL, LP and Congress Financial Corporation, Defendants/Counterclaim Plaintiffs Below, Appellants,

v.

FEDERAL INSURANCE COMPANY, Plaintiff/Counterclaim Defendant Below, Appellee.

No. 620, 2008.

Supreme Court of Delaware.

Submitted: May 13, 2009.
Decided: Aug. 10, 2009.

Theodore J. Tacconelli, Esquire, and Rick S. Miller, Esquire of Ferry, Joseph & Pearce, P.A., Wilmington, DE; Of Counsel: Lawrence P. Eagel, Esquire (argued), Paul D. Wexler, Esquire and Jeffrey H. Squire, Esquire of Bragar Wexler Eagel & Squire, P.C., New York City, for Appellants Hilco Capital, LP and Congress Financial Corporation.

Carmella P. Keener, Esquire of Rosenthal, Monhait & Goddess, P.A., Wilmington, DE; Of Counsel: Wallace A. Christensen, Esquire (argued), Merril Hirsh, Esquire and Jonathan Cohen, Esquire of Troutman Sanders, LLP, Washington, DC, for Appellee Federal Insurance Company.

Before BERGER, JACOBS and RIDGELY, Justices.

BERGER, Justice:

This appeal involves an insurance coverage dispute that was resolved by a decision granting partial summary judgment to the insurer, followed by a jury verdict responding to three special interrogatories, also in favor of the insurer. Appellants argue that the trial court erred in holding that: (1) the insurer had no implied duty of good faith to consider a settlement of appellants' claims; and (2) the insurer's consent was required before the claims could be settled. In addition, appellants challenge several evidentiary rulings at trial as well as certain jury instructions. We find that, even if the trial court erred in some respects, the jury verdict in favor of the insurer was correct and must be affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

Hilco Capital, LP and Congress Financial Corporation (collectively, Hilco) are financial institutions that made loans to Payless Cashways, Inc. In 2003, Hilco sued Payless's officers and directors (the Insureds), alleging that they had misrepresented the value and amount of Payless's inventory (the Barron Action). The Insureds had three layers of directors and officers liability coverage from three different insurers. National Union Fire Insurance Company of Pittsburgh, PA issued the primary policy, covering the first $10 million of exposure. Federal Insurance Company issued the first excess policy, covering the next $10 million of exposure, and Twin City Fire Insurance Company provided the third $10 million layer of coverage.

The parties to the Barron Action tried to settle their claim at an early mediation, but were unsuccessful. Discovery ended in October 2004, and trial was scheduled to begin on January 24, 2005. A second mediation took place on December 7, 2004. The parties, National Union, and their counsel attended. Federal's claims examiner, Mary Ann Alsnauer, talked with counsel for the Insureds, David Shay, about whether she should attend. Because both Shay and National Union valued the Barron Action claims at less than

$10 million, and because Shay told Alsnauer that the defense team would rather try the case than settle for more than $10 million, it was agreed that Federal would not attend the mediation. Nonetheless, Alsnauer remained available to be contacted by telephone.

After a day-long mediation had achieved no resolution, the mediator proposed that the parties agree to arbitrate a single issue—whether any of the Insureds should have known that a Payless employee had falsified the company's inventory numbers. Under the mediator's proposal, National Union would pay Hilco $5 million immediately. If Hilco lost at the arbitration, Hilco would retain that payment, but receive nothing more. If Hilco won, it would receive the balance of National Union's policy (approximately $3.5 million) and approximately $7 million from Federal's policy.

The parties to the mediation agreed to the proposal, but that occurred at about 10 p.m. Eastern time, and Shay was unable to reach Alsnauer to determine whether Federal would agree. Rather than wait until the next morning, the parties eliminated the need for Federal's consent by agreeing that the Insureds would not be personally liable and that the Insureds would assign their rights in the Federal policy to Hilco. Under the Memorandum of Understanding (MOU) executed that evening, Hilco would be assured a recovery against National Union up to its policy limits (if the arbitrator ruled in Hilco's favor), and would have the right to proceed against Federal for the approximately $7 million, which was Hilco's agreed maximum recovery.

While the settlement was being finalized, Hilco asked Federal to consent to it. Alsnauer reviewed the proposal, as well as Shay's letter analyzing the risks, but concluded that the settlement was not acceptable. From a defense standpoint, she noted that the one question being presented to the arbitrator eliminated several important defenses and standards of proof that would have benefited the Insureds at a trial. From a settlement perspective, she thought that a "straight" settlement could be achieved at a lower amount. Alsnauer explained that, since Hilco had agreed to a range of $3.8–15.5 million,[1] Hilco probably would agree to an amount midway between the high and low amounts in order to avoid the risk of losing the arbitration. Such a result might not even reach Federal's layer of coverage.

A court-ordered settlement conference was set to take place on January 5, 2005. Alsnauer asked the parties to wait until after the settlement conference before signing the final MOU, but they did not. Alsnauer formally objected to the settlement when it was presented to the court on January 5, 2005. Months later, the Insureds arbitrated the one question presented in the MOU, and Hilco prevailed. National Union paid its policy limits, but Federal denied coverage on the ground that the Insureds breached the policy by settling their claims without Federal's consent.

Federal brought a declaratory action in Superior Court at the same time that Hilco sued in Missouri to collect on its judgment. The Missouri action was dismissed for lack of jurisdiction, so Hilco interposed its claim for payment as a counterclaim in this action. On cross motions for summary judgment, the trial court held that: 1) Federal had no duty to negotiate with the Insureds under Missouri's implied cove-

---

1. Originally, the low number was $5 million, but the parties negotiated that down to $3.8 million.

nant of good faith and fair dealing; and 2) the consent-to-settlement provision in National Union's policy applied to Federal. The remaining issues—whether Federal unreasonably withheld its consent, and whether the settlement was reasonable and non-collusive—were tried to a jury. By special interrogatories, the jury found that: 1) the Insureds breached the policy before Federal made any decision whether to consent to the settlement; 2) Federal did not unreasonably withhold its consent to the settlement; and 3) Federal was not permitted to effectively associate in the negotiation of the settlement. This appeal followed.

## DISCUSSION

Hilco argues that the trial court erred in both of its legal rulings on summary judgment. In addition, Hilco claims that the trial court erred or abused its discretion in: 1) instructing the jury that the question of whether Federal unreasonably withheld its consent is determined under a subjective rather than an objective standard; 2) excluding Hilco's expert testimony; 3) instructing the jury that the Insureds could breach the policy if they manifested an intent to settle before Federal had a chance to consent; 4) allowing the jury to consider the "effective association" issue; and 5) excluding correspondence between counsel for National Union and Federal concerning their differing views about the settlement.

▬▬ We agree with Hilco that the trial court erred in its analysis of the covenant of good faith and fair dealing. The law in Missouri, as in Delaware, is that all contracts include an implied cove-

nant of good faith and fair dealing.[2] The trial court correctly stated the general principle that, "there can be no breach of the ... covenant of good faith and fair dealing where the contract expressly permits the actions being challenged...."[3] But, the corollary is that, when a contract gives one party discretion, "it must not be exercised to deprive the other party of the benefit of the contractual relationship or evade the spirit of the bargain."[4] Thus, despite the fact that the Participation Clause in the Federal policy gave Federal "sole discretion" whether to participate in the settlement of any claim, Federal still had to exercise that discretion consistent with its covenant of good faith and fair dealing.

The trial court granted Federal summary judgment on this issue without considering the record. It held that the Participation Clause precluded a claim for breach of the covenant of good faith and fair dealing. We conclude that summary judgment is appropriate, but for a different reason. Viewing the record in the light most favorable to Hilco, there are no issues of material fact in dispute and Federal is entitled to judgment as a matter of law.

The undisputed evidence is that Federal, National Union, and the Insureds all agreed that Federal should not attend the December 2004 mediation because it would send the wrong message about the defense team's assessment of their potential liability. Thus, there is no support for a claim that Federal breached the covenant by failing to attend the mediation. After the mediation participants agreed in principle to the "high-low, one issue" arbitration, it

**2.** *Farmers' Elec. Coop. v. Mo. Dep't. of Corr.,* 977 S.W.2d 266, 271 (Mo.1998).

**3.** *City of St. Joseph v. Lake Contrary Sewer Dist.,* 251 S.W.3d 362, 371 (Mo.Ct.App.2008).

**4.** *Id.* at 370.

was they who refused to wait until the next day to discuss that proposal with Federal. Instead, they effectively cut Federal out of the process by agreeing that the Insureds would assign their rights to Hilco.

During the period between the execution of the MOU and the scheduled settlement conference, the parties to the MOU worked on finalizing the terms of their agreement. Viewing the facts in the light most favorable to Hilco, Federal "refused" to participate, and "insisted" that National Union offer its policy limits before Federal would join in the negotiations. Those facts, however, do not support a claim that Federal breached the covenant of good faith and fair dealing.

Federal was willing to negotiate, but it wanted to pursue a "straight" settlement. Such a settlement would require National Union's agreement to tender policy limits (unless the settlement amount was below National Union's policy limits, in which case Federal would have no economic interest.) But National Union would not agree, because the MOU gave it a better deal. At worst, National Union would have to pay policy limits, and at best, National Union would have to pay approximately $3.8 million less than policy limits. Thus, Federal's only recourse with respect to negotiations was to present its position to the Missouri court at the settlement conference. The mediation participants mooted that effort by executing a definitive settlement agreement the day before the conference. In sum, there is no record support for a breach of good faith claim against Federal.

■ We affirm the second summary judgment ruling on the basis of the trial court's decision,[5] correctly holding that

Federal's policy incorporated the consent provision from the National Union policy. Not only does that result follow the language of the policy, but also it comports with the understanding of both parties to the contract. Hilco was not a party to the contract, and acquired its interest in the Federal policy with knowledge of the parties' interpretation of their contract. The intent of the contracting parties, not outsiders, controls the construction of the agreement.

The remaining issues relate to Federal's decision to withhold consent to the settlement. The jury found that Federal did not act unreasonably, but Hilco complains about certain evidentiary rulings as well as allegedly improper jury instructions. Regarding the evidentiary rulings, the trial court allowed Federal's expert, a D & O attorney, to testify that: (1) he had never encountered a high-low settlement like the one agreed to here; (2) it was totally contrary to custom and practice to negotiate such an agreement without the excess carrier's consent; and (3) Federal had no ability to negotiate after the parties agreed in principle to the mediation proposal. Hilco proffered another attorney, an expert in mediations, to rebut those opinions. The trial court excluded Hilco's expert, without explanation. In addition, the trial court excluded correspondence between attorneys for National Union and Federal that, according to Hilco, contained significant admissions concerning Federal's settlement strategy. Finally, the trial court allowed Shay to testify that Federal had a reasonable basis to withhold consent to the settlement.

Hilco also argues that three of the jury instructions were improper. First, Hilco contends that the trial court incorrectly

---

**5.** *Federal Ins. Co. v. Hilco Capital, LP and Congress Financial Corp.*, 2008 WL 3021109 at *5 (Del.Super.).

instructed the jury to use a subjective, rather than an objective, standard in deciding whether Federal unreasonably withheld its consent to the settlement. Second, Hilco argues that there was no factual basis on which to instruct the jury that the Insureds could breach the Federal policy by orally agreeing to a settlement before Federal had the opportunity to grant or withhold its consent. Third, Hilco argues that there was no factual basis on which to instruct the jury that the Insureds could breach the Federal policy by depriving Federal of the opportunity to "effectively associate" in the settlement.

We review the trial court's evidentiary rulings for abuse of discretion. If there is an abuse of discretion, we then must "consider whether the mistakes constituted significant prejudice so as to have denied [Hilco] a fair trial."[6] The trial court acted well within its discretion in excluding the post-settlement correspondence between attorneys. It was both hearsay and irrelevant. Assuming without deciding that the trial court abused its discretion in making the remaining evidentiary rulings, we are satisfied that those rulings did not deny Hilco a fair trial.

Hilco's expert would have testified, in essence, that: 1) the mediation process and result were reasonable; 2) Federal was not deprived of opportunities to negotiate; and 3) the Barron Action would not have settled within National Union's policy limits. But those opinions were not critical to Hilco. Shay agreed that the mediation process and the result were in the best interest of the Insureds. Alsnauer agreed that Federal was free to attend the mediation, but declined. And both witnesses confirmed that Hilco was not willing to settle within National Union's policy limits. Thus, Hilco suffered little, if any, prejudice from the exclusion of its expert.

The same analysis applies to Shay's testimony that, as the attorney for the Insureds, he believed Federal had a reasonable basis to withhold consent to the settlement. Shay was the principal witness for Federal. He testified at length about the Barron Action—the evidence developed through discovery, the numerous claims and defenses, and the claimed damages. He believed it was more likely than not that the Insureds would win if the case went to trial and that Hilco had grossly overstated its damages. Shay also testified that he believed a "straight" settlement could have been negotiated for less than the $15.5 million "high" end of the high-low agreement. In light of this testimony, it was obvious that Shay thought Federal had a reasonable basis to withhold its consent. Thus, his testimony on that question did not deny Hilco a fair trial.

Hilco also complains about the jury instruction on Federal's withholding consent to the settlement. The policy's consent clause provides that the Insureds "shall not . . . enter into any settlement agreement . . . without the prior written consent of the Insurer. . . . The Insurer's consent shall not be unreasonably withheld . . ."[7] The trial court instructed the jury:

To show that [Federal] unreasonably withheld its consent to the settlement, the HILCO parties must first prove that [Federal's] consent to the settlement was, in fact, requested. If they do, then the HILCO parties must prove, based upon the totality of the facts and circumstances known to [Federal], that [Federal] did not have a reasonable basis for its decision to withhold consent to the

6. *Potter v. Blackburn*, 850 A.2d 294, 297 (Del. 2004).

7. Appellants' Appendix, A-49.

settlement. It is not enough for the HILCO parties to show that the settlement offer was reasonable, or that other individuals or insurers might have consented to the settlement under the same circumstances.[8]

Hilco argues that this instruction tells the jury to use a subjective standard, contrary to law. We review jury instructions *de novo*. The instruction need not be perfect, but is must "give a correct statement of the substance of the law and must be reasonably informative and not misleading." [9]

Relying on *Gulf Ins. Co. v. Noble Broadcast*,[10] Hilco argues that the jury should have been instructed to decide what a reasonably prudent person in Federal's position would have settled for given the merits of Hilco's claim, not whether Federal unreasonably withheld its consent. *Gulf* is inapposite. That case considered the enforceability of a settlement under section 537.065 RSMo, a Missouri statute that allows the parties to enter a consent judgment and limit the assets from which the plaintiff may recover. The *Gulf* court recognized that tortfeasors have no incentive to limit the amount of the recovery because their agreement requires the plaintiff to recover from the insurance carrier. Thus, *Gulf* held that the amount of a "sec-tion 537.065" agreement must meet an independent standard of reasonableness.

Here, the reasonableness of the amount of the settlement certainly would be a factor in considering whether Federal complied with its contractual obligation. But it is not the only factor. The trial court correctly instructed the jury to consider all the facts and circumstances in deciding whether Federal had a reasonable basis to withhold its consent.[11] The instructions were not misleading and they did not allow the jury to use a subjective standard in deciding the reasonableness of Federal's decision.

Because the jury found that Federal had a reasonable basis to withhold consent, we need not address the two alternative grounds on which the jury found for Federal.

## CONCLUSION

Based on the foregoing, the judgment of the Superior Court is hereby AFFIRMED.

---

8. Appellants' Appendix, A–1171.

9. *Corbitt v. Tatagari*, 804 A.2d 1057, 1062 (Del.2002) (Internal quotation omitted).

10. 936 S.W.2d 810, 816 (Mo.1997).

11. *See: Schwartz v. Twin City Fire Ins. Co., et al.*, 492 F.Supp.2d 308, 319 (S.D.N.Y.2007), *aff'd. sub nom Schwartz v. Liberty Mutual Ins. Co.*, 539 F.3d 135 (2nd Cir.2008).