# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| ARCH INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, CONTINENTAL CASUALTY INSURANCE COMPANY, NAVIGATORS INSURANCE COMPANY, RSUI INDEMNITY COMPANY, and BERKLEY INSURANCE COMPANY, | ) ) ) ) ) ) ) ) ) ) |  |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| v. | ) | C.A. No. N16C-01-104 EMD CCLD |
|  | ) |  |
| DAVID H. MURDOCK, DOLE FOOD COMPANY, INC., and DFC HOLDINGS, LLC, | ) ) ) |  |
|  | ) |  |
| Defendants. | ) |  |

Submitted: January 22, 2019
Decided: May 7, 2019

*Upon Defendant David H. Murdock's Motion for Summary Judgment*
***GRANTED in part and DENIED in part***

*Upon Defendant Dole Food Company, Inc.'s Motion for Summary Judgment*
***GRANTED in part and DENIED in part***

*Upon Defendant DFC Holdings, LLC's Motion for Summary Judgment*
***GRANTED in part and DENIED in part***

*Upon Plaintiff Insurers' Second Motion for Summary Judgment*
***GRANTED in part and DENIED in part***

Robert J. Katzenstein, Esquire and Kathleen M. Miller, Esquire, Smith, Katzenstein & Jenkins LLP, Wilmington, Delaware. *Attorneys for All Plaintiffs.*

Ronald P. Schiller, Esquire, Daniel J. Layden, Esquire, Bonnie M. Hoffman, Esquire and Hangley Aronchick Segal, Pudlin & Schiller, Philadelphia, PA. *Attorneys for Navigators Insurance Company.*

Michael L. Manire, Esquire and Deeanna M. Galla, Manire & Galla LLP, New York, New York, Robert P. Conlon, Esquire and Kevin A. Lahm, Esquire, Walker Wilcox Matousek LLP,

Chicago, Illinois, Merril Hirsh, Esquire, Merril Hirsh PLLC, Washington, D.C. *Attorneys for RSUI Insurance Company*.

Elena C. Norman, Esquire and Mary F. Dugan, Esquire, Young Conaway Stargatt & Taylor LLP, Wilmington, Delaware, Kirk A. Pasich, Esquire and Pamela Woods, Esquire, Pasich LLP, Los Angeles, California, Mikaela Whitman, Esquire and Jeffrey L. Schulman, Esquire, Pasich LLP, New York, New York. *Attorneys for David H. Murdock, Dole Food Company, Inc., and DFC Holdings, LLC*.

**DAVIS, J.**

## I. INTRODUCTION

This breach of contract case is assigned to the Complex Commercial Litigation Division of this Court. Plaintiffs Arch Insurance Company, Liberty Mutual Insurance Company, Continental Casualty Insurance Company, Navigators Insurance Company ("Navigators"), RSUI Indemnity Company ("RSUI"), and Berkley Insurance Company are six excess insurance carriers. The insurance carriers filed a declaratory judgment against Defendants David H. Murdock, Dole Food Company, Inc. ("Dole"), and DFC Holdings, LLC ("DFC") (collectively, the "Defendants"). The insurance carriers seek a declaratory judgment that they do not have to fund an underlying settlement due to Defendants' alleged breaches of the applicable insurance policies (the "Policies").

On August 22, 2018, Navigators and RSUI (collectively, the "Insurers") filed their second motion for summary judgment (the "Insurers' Motion"). In addition, on August 22, 2018, the Defendants each filed motions for summary judgment (collectively the "Defendants' Motions"). On December 7, 2018 and January 22, 2019, the Court held hearings (the "Hearings") on the Insurers' Motion and the Defendants' Motion (collectively, the "Motions"). After the Hearings, the Court took the matter under advisement. This is the Court's opinion on

the Motions.  For the reasons set forth more fully below, the Motions are **GRANTED** in part and **DENIED** in part.[1]

## II. RELEVANT FACTS

### A. PARTIES

The Insurers provided part of Dole's overall tower of Directors' and Officers' Liability insurance coverage.[2]  The Policies are in excess of, and follow form to, Axis Insurance Company's Primary Policy (the "Primary Policy") and two, non-party, excess carriers: National Union Fire Insurance Company and Federal Insurance Company.[3]  The Primary policy provides $15,000,000 in coverage.[4]  Navigators' and RSUI's policies were the seventh and eighth "layers" in the tower, and each provided $10,000,000 in coverage excess of a $500,000 retention (to be paid by Dole) and $65,000,000 and $75,000,000 in underlying insurance, respectively.[5]

Navigators is a New York corporation with its principal place of business in New York.[6] RSUI is a New Hampshire corporation with its principal place of business in Georgia.[7] Dole is a Delaware corporation.[8]  Mr. Murdock owned 40% of Dole's stock and was a director and officer of Dole.[9]  C. Michael Carter was Dole's president and CEO.[10] DFC is a Delaware LLC that acts as an acquisition vehicle.[11]

---

[1] On May 1, 2019, the Court issued a decision granting summary judgment in favor of the Insureds on the Defendants' Counterclaim 3.  D.I. No. 397.

[2] Plaintiffs' Amended Complaint for Declaratory Relief ("Compl.") at ¶ 21.

[3] *See Arch Ins. Co. v. Murdock*, 2016 WL 7414218, at *1 (Del. Super. Dec. 21, 2016) (setting out the Insurers' range of coverage).

[4] Stolle Aff. at ¶ 4.

[5] *Id*. at ¶ 5.

[6] Compl. at ¶ 11.

[7] *Id.* at ¶ 12.

[8] *Id.* at ¶ 16.

[9] *Id.* at ¶ 14.

[10] *Id.* at ¶ 15.

[11] *Id.* at ¶ 17.  Mr. Carter was initially named as a defendant but he was subsequently dismissed him from this civil action.

## B. RELEVANT POLICY PROVISIONS

Dole executed the Policies with the Insurers. The Policies are claims-based insurance for the directors, officers, and corporate liability. Section 1 of the Primary Policy, as amended by Endorsement 3, lists the situations in which the Insurers are obligated to provide coverage to insureds.[12] In the Policies, the term "Insureds" refers to the "Policyholder" and "Insured Individuals."[13] The term "Policyholder" refers to Dole and its subsidiaries and "Insured Individuals" include the directors and officers of Dole.[14] Section 1 states:

> A. The Insurer shall pay on behalf of the Insured Individual all Loss which is not indemnified by the Policyholder arising from any Claim for a Wrongful Act first made against or Insured Inquiry first received by such Insured Individual during the Policy Period or the Extended Reporting Period, if applicable.
>
> B. The Insurer shall pay on behalf of the Policyholder all Loss for which the Policyholder grants indemnification to any Insured Individual, as permitted or required by law, arising from any Claim for a Wrongful Act first made against or Insured Inquiry first received by such Insured Individual during the Policy Period or the Extended Reporting Period, if applicable.
>
> C. The Insurer shall pay on behalf of the Policyholder all Loss arising from any Securities Claim first made against the Policyholder during the Policy Period or the Extended Reporting Period, if applicable, for a Wrongful Act.[15]

### 1. Loss

Section III of the Primary Policy, as amended by Endorsement 3, defines "Loss" as:

> Loss means all monetary amounts which the Insureds become legally obligated to pay on account of a Claim, including damages, settlement amounts and judgments, including any award of punitive, exemplary or multiple damages, pre-judgment or post-judgment interest, costs and fees awarded pursuant to judgments, Defense Costs . . . .
>
> Loss does not include: . . .

---

[12] Stolle Aff., Ex. 1, End. 3.
[13] *Id.*
[14] *Id.*
[15] *Id.*

4

4.  any amount representing the increase in the consideration paid (or proposed to be paid) by the Policyholder in connection with its purchase of any securities or assets; or

5.  matters uninsurable under the law applicable to this Policy, provided:

> a. the law of the jurisdiction most favorable to the insurability of such matters shall apply; provided further such jurisdiction is: (i) where such amounts were awarded or imposed; (ii) where any Wrongful Act underlying the Claim took place; (iii) where either the Insurer or any Insured is incorporated, has its principal place of business or resides; or (iv) where this Policy was issued or became effective.[16]

Section III of the Primary Policy, as amended by Endorsement 3, also defines "Wrongful Act" as "any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty by [among others] . . . any Insured Individual . . . ."[17]

### 2.  The Written Consent Provision

Section V.D of the Primary Policy, as amended by Endorsement 3, contains a provision, which requires the Insureds to obtain the Insurers' written consent before the Insureds may enter into a settlement (the "Written Consent Provision").[18] The Written Consent Provision states: "[t]he Insureds shall not admit any liability, settle, offer to settle, stipulate to any judgment or otherwise assume any contractual obligation with regard to any Claim or Insured Inquiry without the Insurer's prior written consent, which shall not be unreasonably withheld."[19]

---

[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.* (also citing the old provision, which stated: "[i]nsureds shall not settle any Claim, select any defense counsel, incur any Defense Costs, admit or assume any liability, stipulate to any judgment without the Insurer's prior written consent, which shall not be unreasonably withheld, or otherwise assume any contractual obligation. The Insurer shall not be liable for any settlement, Defense Costs, assumed obligation, admission or stipulated judgment to which it has not consented or for which the Insureds are not legally obligated.").

5

### 3. *The Cooperation Clause*

Section V.D of the Primary Policy, as amended by Endorsement 3, also contains a provision that requires the Insureds to cooperate with the Insurers (the "Cooperation Clause"). The Cooperation Clause states:

> The Insurer shall have the right and shall be given the opportunity to effectively associate with the Insureds in the investigation, defense and settlement, including but not limited to the negotiation of a settlement, of any Claim that appears reasonably likely to be covered in whole or in part hereunder.

> The Insureds shall provide the Insurer with all information, assistance and cooperation which the Insurer reasonably requests and shall do nothing that may prejudice the Insurer's potential or actual rights of recovery with respect to Loss paid; provided the failure of one Insured Individual to comply with this provision shall not impair the rights of any other Insured Individual under this Policy.[20]

### 4. *Allocation*

Finally, Section VIII.A of the Primary Policy on the allocation of insurance coverage between Insureds and non-Insureds states:

> If in any Claim, the Insureds who are afforded coverage for such Claim incur Loss jointly with others (including other Insureds) who are not afforded coverage for such Claim, or incur an amount consisting of both Loss covered by this Policy and loss not covered by this Policy because such Claim includes both covered and uncovered matters, then the Insureds and the Insurer agree to use their best efforts to determine a fair and proper allocation of covered Loss. The Insurer's obligation shall relate only to those sums allocated to matters and Insureds which are afforded coverage. In making such determination, the parties shall take into account the relative legal and financial exposures of the Insureds in connection with the defense and/or settlement of the Claim.[21]

### C. IN RE DOLE FOOD COMPANY, INC. STOCKHOLDER LITIGATION

In 2013, Mr. Murdock utilized DFC to acquire the remaining Dole stock and take it private.[22] Mr. Murdock completed the acquisition in November 2013. Mr. Murdock paid

---

[20] *Id.*
[21] *Id.*
[22] Compl. at ¶ 17.

shareholders $13.50 per share.[23] Thereafter, the shareholders filed multiple lawsuits challenging the transaction's fairness.[24]

*In re Dole Food Company, Inc. Stockholder Litigation* ("Memorandum Opinion")[25] is one of two shareholder litigations relevant to this civil action. This action was filed in the Delaware Court of Chancery (the "Chancery Court"). The Defendants were all parties to the Memorandum Opinion.[26] The stockholders alleged Defendants engaged in a lengthy process that manipulated the stock price so that Mr. Murdock could acquire the stock at a lower price.[27] At the outset of the litigation, Dole paid the defense costs incurred.[28] Once the $500,000 retention had been met, AXIS began to pay the defense costs.[29] By March 2015, AXIS had paid $15,000,000 in defense costs for the litigation.[30] The first excess insurer, National Union Fire Insurance Company, then paid defense costs.[31]

Vice Chancellor Laster, in his Memorandum Opinion, repeatedly cited to "fraud" and "fraudulent activity."[32] Vice Chancellor Laster specifically found breaches of the duty of loyalty, and assessed liability against Mr. Murdock, Mr. Carter, and DFC in the amount of $148,190,590.18.[33] The plaintiffs also were entitled to seek their attorneys' fees in addition to this amount.[34]

---

[23] *Id.* at ¶ 18.
[24] *Id.*
[25] 2015 WL 5052214, at *3-25 (Del. Ch. Aug. 27, 2015); Compl. ¶ 20. The Court acknowledges that the term "Memorandum Opinion" is not the best-defined term for a lawsuit; however, the Memorandum Opinion best memorializes what actually happened in the lawsuit.
[26] *Dole*, 2015 WL 5052214 at *1.
[27] *Id.* at *3-25.
[28] Gale Aff. at ¶ 6.
[29] *Id.*
[30] *Id.*
[31] *Id.* at ¶ 7.
[32] *Dole*, 2015 WL 5052214 at *2, 26.
[33] *Id.* at *47.
[34] Mr. Murdock's Mot. at 5 (hereafter defined).

7

On September 21, 2015, Dole's "insurance recovery counsel" wrote to the Insurers.[35] The letter attached the Memorandum Opinion and notified the Insurers that Dole was considering settlement and mediation.[36] It asked that the Insurers fund a settlement.[37] The Insurers all responded, citing various potential exclusions and requesting more information from Dole.[38] On October 29, 2015, Dole, Mr. Murdock and Mr. Carter responded.[39] Dole disagreed with one of the Insurers' reservations, and again demanded coverage for the underlying settlement.[40]

On November 5, 2015, Dole signed a term sheet settling the underlying action.[41] On December 7, 2015, the underlying parties signed a formal Stipulation and Agreement of Settlement (the "Settlement").[42] In lieu of an appeal, the parties settled for 100% plus interest.[43] Mr. Murdock agreed to pay the settlement on the Defendants' behalf. Vice Chancellor Laster approved the settlement on February 10, 2016 (the "Order and Final Judgment").[44] The Settlement caused the Chancery Court action to be dismissed with prejudice[45] The Insurers did not object to the Settlement or appeal the Order and Final Judgment in the Chancery Court.[46]

The Defendants contend that they kept the Insurers informed as to the progress of the negotiations and provided copies of drafts of term sheets.[47] The Defendants also state that none

---

[35] Compl. at ¶ 45.
[36] *Id*. at ¶ 46.
[37] *Id*.
[38] *See id.* Ex. 12 (Letter from Federal Insurance Company); Ex. 13 (Letter from Arch Insurance Company); Ex. 14 (Letter from Liberty International Underwriters); Ex. 15 (Letter from Continental Insurance Company); Ex. 16 (Letter from Navigators Insurance Company); Ex. 17 (Letter from RSUI Indemnity Company); Ex. 18 (Letter from Berkley Insurance Company).
[39] *Id*, Ex. 19.
[40] *See id.*
[41] Compl. at ¶ 51.
[42] *Id*. at ¶ 57.
[43] Insurers' Mot. at 6 (as hereafter defined).
[44] Compl., Ex. 3 at 13.
[45] *Id*. at ¶ 6.
[46] Affidavit of Pamela M. Woods ("Woods Aff.") at ¶¶ 18, 20.
[47] *Id*. at ¶¶ 6-8.

of the Insurers asked to participate in the settlement negotiations or objected to or commented on any of the settlement terms.[48] On February 26, 2016, Dole's counsel wrote to the Insurers, seeking indemnification for the Settlement.[49]

On January 13, 2016, prior to the Chancery Court's approving the Settlement, the Insurers filed this civil action.

## D. SAN ANTONIO FIRE & POLICE PENSION FUND V. DOLE FOOD CO., INC.

On December 9, 2015, suit was filed against Dole and Mr. Murdock in United States District Court for the District of Delaware—*San Antonio Fire & Police Pension Fund v. Dole Food Co., Inc.,* No. 1:15-CV-01140 (D. Del.)(the "San Antonio Action").[50] The Defendants state that Dole gave the Insurers notice of the San Antonio Action.[51] The Insurers responded over a six-month period as to their respective coverage positions.[52] According to the Defendants, the Insurers took the same coverage positions with respect to the San Antonio Action as were taken in the Memorandum Opinion.[53]

In October 2016, the Delaware District Court scheduled an Alternative Dispute Resolution teleconference in the San Antonio Action.[54] The Defendants notified the Insurers of this teleconference.[55] The San Antonio Action plaintiffs then approached the Defendants about mediation, and the parties discussed the timing of such a mediation and potential mediators.[56]

---

[48] *Id.* at ¶¶ 14-18.
[49] Counterclaims at ¶ 54 (hereafter defined).
[50] Woods Aff., ¶ 23.
[51] *Id.* at ¶ 24.
[52] *Id.* at ¶¶ 24, 26-28, 31, 37.
[53] *Id.*
[54] Affidavit of Alexander K. Mircheff ("Mircheff Aff.") at ¶3.
[55] *Id.*
[56] *Id.* at ¶ 4.

The Defendants scheduled a teleconference to discuss the potential mediation with the Insurers.[57] During this teleconference, the Defendants stated to the Insurers that the Defendants thought it would be beneficial to mediate the San Antonio Action.[58] The Defendants purported to identify potential mediators that had been previously discussed with the plaintiffs and asked the Insurers for input.[59] The Insurers provided some feedback on potential mediators but none objected to the mediation or to using Judge Layn Phillips as a mediator.[60]

Arch and Liberty asked the Insured to provide who was the Insured's damages expert and a damage assessment report during the teleconference.[61] The Defendants refused to provide this information, claiming that it was work product or attorney-client privileged information and if it was disclosed to non-defending insurers it could be argued that the Defendants waived these privileges.[62]

The Defendants relayed to the Insurers the mediation dates.[63] Once each Insurer signed a Mediation Confidentiality Agreement required by the mediator, the Defendants provided the mediation briefs to the Insurers.[64] According to the Defendants, only Arch and Liberty attended the mediation and the other Insurers received telephonic updates.[65]

After the mediation, the Defendants told the Insurers that the Defendants had provisionally agreed to terms of a term sheet (the "Term Sheet").[66] The Term Sheet was subject to the approval of Dole's board of directors within ten business days.[67] The Defendants asked

---

[57] *Id.* at ¶¶ 5-6.
[58] *Id.*
[59] *Id.*
[60] *Id.*
[61] Woods Aff. at ¶ 30.
[62] *Id.*
[63] *Id.* at ¶ 32-35.
[64] *Id.*
[65] *Id.* at ¶ 38.
[66] *Id.* at ¶ 39.
[67] *Id.*

10

the Insurers to confirm that the Insurers would contribute to the settlement reached in the Term Sheet.[68]  The Defendants also provided the Insurers with information requested in the November 2016 teleconference—damage analyses by Dole's consulting expert—and asked them to let the Defendants know if they needed any additional information.[69]  According to the Defendants, none of the Insurers requested additional information.[70]

The Insurers each responded to the request that it contribute to fund the settlement.[71]  The Insurers did not fund the settlement.[72]  The Defendants negotiated a final settlement (the "San Antonio Settlement") with the San Antonio Action plaintiffs.[73]  The Delaware District Court entered a Judgment Approving Class Settlement, finding that the settlement was "in all respects, fair, reasonable, and adequate to the Settlement Class."[74]

The Insurers did not provide prior written consent for (i) the Settlement or (ii) the San Antonio Settlement.

### E.  PROCEDURAL HISTORY

The Insurers filed a complaint on January 13, 2016.  The parties stipulated to dismiss the Insurers' claims against DFC, because DFC, is not an insured under any of the policies."[75]  The Insurers filed an Amended Complaint for Declaratory Judgment (the "Amended Complaint") on April 8, 2016.  The Amended Complaint has two counts.  In Count I, Insurers seek a declaratory judgment that the Insurers have no obligation to pay for the Settlement under the terms of the Policies.  The Insurers disclaim coverage for the Settlement because, among other reasons, (i) the

---

[68] *Id.*
[69] *Id.* at ¶ 41.
[70] *Id.* at ¶ 42.
[71] *Id.* at ¶ 44.
[72] *Id.*
[73] Mircheff Aff.at ¶ 10.
[74] *Id.,* Ex. G.
[75] MTD Decision, at *2 (hereafter defined).

11

Policies do not cover Dole, (ii) California Insurance Code Section 533 bars coverage, (iii) the Settlement does not constitute "Loss" covered under the Policies, (iv) the Defendants were not acting in an insured capacity in the circumstances under which the Defendants claim coverage, (v) the Employed Attorney Exclusion in Primary Policy Section IV, as amended by Endorsement No. 5 bars coverage, (vi) applicable law and public policy bar coverage, (vii) Primary Policy Section IV.A.6, as amended by Endorsement No. 3 bars coverage, (viii) Section VIII as amended by Endorsement No. 3 bars coverage, (ix) the Defendants breached the Written Consent Provision and the Cooperation Clause in Primary Policy Section V.D, as amended by Endorsement No. 3, and (x) excess coverage is not available until the Defendants have exhausted their primary coverage. In Count II, Insurers seek declaratory judgment that the Insurers are subrogated to any rights the Defendants have to recover payments from the Mr. Carter, Mr. Murdock, and DFC.

On April 28, 2016, the Defendants filed a Motion to Dismiss.[76] Then, on December 21, 2016, the Court partially granted Motion to Dismiss (the "MTD Decision").[77] As set out more fully in the MTD Decision, the Court found that: (i) the Insurers have sufficiently plead a claim for declaratory judgment in Count I, (ii) Primary Policy Section IV.A.6 does not apply to this case, and (iii) the Insurers cannot subrogate claims against the Defendants.[78]

The Defendants filed their amended answer, affirmative defenses, and counterclaims (the "Counterclaims") on April 18, 2017. The Defendants assert five counterclaims: (i) Counterclaim 1—the Insurers breached the Policies by refusing to pay for the Settlement; (ii) Counterclaim 2—the Insurers breached the Policies by refusing to pay for the San Antonio Settlement; (iii)

---

[76] *Id.* at *2.
[77] *Id.* at *8.
[78] *Id.* at *4-8.

12

Counterclaim 3—the Insurers breached the implied covenant of good faith and fair dealing in denying coverage for the Settlement and the San Antonio Settlement; (iv) Counterclaim 4—the Insurers committed fraud because the Insurers never had any intention of fulfilling its obligations under the Policies; and (v) Counterclaim 5—fraud in the inducement. In addition to compensatory damages, the Defendants seek punitive damages.

All of the insurance carriers answered the Counterclaims. The insurance carriers assert many of the reasons for disclaiming coverage in the Amended Complaint as affirmative defenses in the insurance carriers' answers to the Counterclaims.

On March 1, 2018, the Court partially granted insurance carriers Arch Insurance Company's, Liberty Mutual Insurance Company's, Continental Casualty Insurance Company's, Navigators', RSUI's, and Berkley Insurance Company's motion for summary judgment (the "First MSJ").[79] In the First MSJ, the Court held that: (i) the Defendants are collaterally estoppel from relitigating the Memorandum Opinion's factual determinations, including those of fraud and disloyalty, to the extent those factual determinations are relevant to this civil action, (ii) Delaware law applies to the Policies, (iii) Delaware law and public policy do not excuse the Insurers from indemnifying the Defendants for breach of loyalty based upon fraud, and (iv) Counterclaim 5 was dismissed with prejudice for failing to state a claim upon which relief can be granted.

The Court also held that it could not grant summary judgment on (i) the Defendants' violation of the Written Consent Provision because the Insurers had not shown that the Insurers suffered sufficient prejudice, (ii) the Defendants' violation of the Cooperation Clause because there were genuine issues of material facts about whether there was a substantial breach of the

---

[79] *Arch Ins. Co. v. Murdock*, 2018 WL 1129110 (Del. Super. Mar. 1, 2018).

13

Cooperation Clause, and (iii) the Defendants' bad faith claim in Counterclaim 3 because the parties had not fully developed the record and genuine issues of material fact remained.[80]

Thereafter, on August 22, 2018, Insurers filed Plaintiff Insurer's Brief in Support of Second Motion for Summary Judgment ("Insurers' Motion"). Then, on September 19, 2018, Defendants' filed Defendants' Answering Brief in Opposition to Plaintiff Insurers' Second Motion for Summary Judgment (the "Defendants' Opposition"). Insurers filed Plaintiff Insurers' Reply Brief in Support of Second Motion for Summary Judgment (the "Insurers' Reply") on October 10, 2018.

In addition, on August 22, 2018, Defendants filed David H. Murdock's Opening Brief in Support of His Motion for Summary Judgment ("Mr. Murdock's Motion"), Defendant Dole Food Company, Inc.'s Opening Brief in Support of its Motion for Summary Judgment ("Dole's Motion"), and Defendant DFC Holdings, LLC's Opening Brief in Support of its Motion for Summary Judgment ("DFC's Motion") (collectively "Defendants' Motions"). Next, on September 19, 2018, Insurers' filed Plaintiff Insurers' Brief in Opposition to Defendants' Motions for Summary Judgment ("Insurers' Opposition"). Finally, on October 10, 2018, Defendants' filed Defendants' Reply Brief in Support of Defendants' Motions for Summary Judgment ("Defendants' Reply").

The Court held hearings (the "Hearings") on December 7, 2018 and January 22, 2019 hearings. After the Hearings, the Court took the matters under advisement.

### III. STANDARD OF REVIEW

The standard of review on a motion for summary judgment is well-settled. The Court's principal function when considering a motion for summary judgment is to examine the record to

---

[80] *Id*. at *16.

determine whether genuine issues of material fact exist, "but not to decide such issues."[81]

Summary judgment will be granted if, after viewing the record in a light most favorable to a nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[82] If, however, the record reveals that material facts are in dispute, or if the factual record has not been developed thoroughly enough to allow the Court to apply the law to the factual record, then summary judgment will not be granted.[83] The moving party bears the initial burden of demonstrating that the undisputed facts support his claims or defenses.[84] If the motion is properly supported, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact for the resolution by the ultimate fact-finder.[85]

Where, as here, the parties have filed cross motions for summary judgment and have not argued that there are genuine issues of material fact, "the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions."[86] Neither party's motion will be granted unless no genuine issue of material fact exists and one of the parties is entitled to judgment as a matter of law.[87]

---

[81] *Merrill v. Crothall-American Inc.*, 606 A.2d 96, 99-100 (Del. 1992) (internal citations omitted); *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, 312 A.2d 322, 325 (Del. Super. 1973).

[82] *Id.*

[83] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962); *see also Cook v. City of Harrington*, 1990 WL 35244 at *3 (Del. Super. Feb. 22, 1990) (citing *Ebersole*, 180 A.2d at 467) ("Summary judgment will not be granted under any circumstances when the record indicates . . . that it is desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances.").

[84] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1970) (citing *Ebersole*, 180 A.2d at 470).

[85] *See Brzoska v. Olsen*, 668 A.2d 1355, 1364 (Del. 1995).

[86] Super. Ct. Civ. R. 56(h).

[87] *E.I. DuPont de Nemours and Co. v. Medtronic Vascular, Inc.*, 2013 WL 261415, at *10 (Del. Super. Jan. 18, 2013).

## IV. PARTIES' CONTENTIONS

### A.     INSURERS' MOTION

In the Insurers' Motion, the Insurers contend that the Court should grant summary judgment finding that (i) the Insurers' had no obligation to provide insurance coverage because Dole and Mr. Murdock violated the Written Consent Provision, (ii) the Insurers' had no obligation to provide insurance coverage because Dole and Mr. Murdock violated the Cooperation Clause, and (iii) the Insurers did not act in bad faith with respect to Dole and Mr. Murdock. In addition, the Insurers argue that the Insurers are entitled to summary judgment under Count II of the Amended Complaint against DFC.  The Defendants oppose the Insurers' Motion.

### B.     DEFENDANTS' MOTION

In the Defendants' Motion, the Defendants argue that the Court should grant summary judgment rejecting the following coverage defenses that the Insurers asserted in the Amended Complaint: (i) the Settlement payment does not constitute "Loss," (ii) no coverage is available under the Policies because the underlying limits of liability have not been exhausted by payment of Loss, (iii) the Insurers' performance is excused because Mr. Murdock violated the  policies' subrogation condition by interfering with the Insurers' subrogation rights, (iv) the Insurers' performance is excused because Mr. Murdock did not comply with the Cooperation Clause, (v) the Insurers' performance is excused because Mr. Murdock did not comply with the Written Consent Provision, and (6) to the extent any portion of the Settlement is covered, any amounts to be paid must be allocated between covered and uncovered Loss.

On May 1, 2019, the Court entered its Order Granting Summary Judgment on Counterclaim 3—Breach of Implied Covenant of Good Faith and Fair Dealing (the

16

"Counterclaim 3 Order").[88]  Through the Counterclaim 3 Order, the Court granted summary judgment in favor of the Insurers on Counterclaim 3.  The Court will not, therefore, further discuss Counterclaim 3 in this decision; however, the Counterclaim 3 Order is incorporated by reference here.

In addition, the Court does not feel that the record, as provided the Court through briefing, was developed enough to rule on issues relating to allocation and exhaustion.  The Court will issue an Order regarding further briefing and argument on those issues.

## V. DISCUSSION

Insurance policies "are construed as a whole, to give effect to the parties' intentions."[89]  In other words, the Court is to interpret the insurance policy through a reading of all of the relevant provisions of the contract as a whole, "and not on any single passage in isolation."[90]  Moreover, an interpretation that gives effect to all the terms of an insurance policy is preferable to any interpretation that would result in a conclusion that some terms are uselessly repetitive.[91]  The Court is also to interpret an insurance policy in a manner that does not render any provisions "illusory or meaningless."[92]

Where the language of an insurance policy is "clear and unambiguous, the parties' intent is ascertained by giving the language its ordinary and usual meaning."[93]  Ambiguous insurance policy language is construed in the insured's favor—*i.e.*, under the

---

[88] D.I. No. 397.
[89] *AT&T Corp. v. Faraday Capital Ltd.*, 918 A.2d 1104, 1108 (Del. 2007). *See also AIU Insurance Co. v. Superior Court,* 729 P.2d 1253, 1264 (Cal. 1990).
[90] *O'Brien v. Progressive Northern Ins.*, 785 A.2d 281, 287 (Del. 2001). *See also Safeco Ins. Co. of America v. Robert S.*, 28 P.3d 889, 894 (Cal. 2001) ("When reasonably practical, contracts are to be interpreted in a manner that makes them reasonable and capable of being carried in effect[.]").
[91] *O'Brien,* 785 A.2d at 287. *See also Safeco Ins. Co. of America,* 28 P.3d at 894.
[92] *O'Brien,* 785 A.2d at 287 (quoting from *Sonitrol Holding Co. v. Marceau Investissements*, 607 A.2d 1177, 1183 (Del. Super. 1992)). *See also Safeco Ins. Co. of America,* 28 P.3d at 894.
[93] *Faraday Capital Ltd.*, 918 A.2d at 1108. *See also AIU Insurance Co.*, 729 P.2d at 1264–65.

doctrine of *contra proferentem*, the language of an insurance policy must be construed most strongly against the insurance company that drafted the policy.[94] This is because insurance contracts are contracts of adhesion.[95] An insurance policy is ambiguous when the provisions at issue "are reasonably or fairly susceptible of different interpretations or may have two or more different meanings."[96] An insurance policy is not ambiguous merely because the parties do not agree on the proper construction.[97]

Coverage language is interpreted broadly to protect the insured's objectively reasonable expectations.[98] Exclusionary clauses, on the other hand, are "accorded a strict and narrow construction."[99] Even so, courts will give effect to exclusionary language where it is found to be "specific," "clear," "plain," "conspicuous" and "not contrary to public policy."[100] The Court also recognizes that case law exists that permits judicial application of the reasonable expectation doctrine to fulfill an insured's expectations even where those expectations contravene the unambiguous, plain meaning of exclusionary clauses.[101]

---

[94] *O'Brien*, 785 A.2d at 288; *see also Weiner v. Selective Way Ins. Co.*, 793 A.2d 434, 440 (Del. Super. 2002); *AIU Insurance Co.*, 729 P.2d at 1264–65.

[95] *See State Farm Mut. Auto. Ins. Co. v. Johnson*, 320 A.2d 345, 347 (Del. 1974) (holding that an insurance contract is "an adhesion contract, not a truly consensual agreement."). *See also J.C. Penney Cas. Ins. Co. v. M.K.*, 804 P.2d 689, 694, n. 9 (Cal. 1991) ("The premise of the strict-construction rule is that an insurance policy is an adhesion contract drafted by the insurer[.]").

[96] *Weiner,* 793 A.2d at 440*; see also Waller v. Truck Ins. Exchange, Inc.*, 900 P.2d 619, 627 (Cal. 1995).

[97] *O'Brien*, 785 A.2d at 288; s*ee also Waller,* 900 P.2d at 627 ("Courts will not strain to create an ambiguity where none exists.").

[98] *AT&T Corp. v. Clarendon Am. Ins. Co.*, 2006 WL 1382268, at *9 (Del. Super. April 25, 2006), *rev'd in part on other grounds*, *AT&T Corp. v. Faraday Capital Ltd.*, 918 A.2d 1104 (Del. 2007). *See also Safeco Ins. Co. of America,* 28 P.3d at 893.

[99] *AT&T Corp.,* 2006 WL 1382268, at *9; s*ee also E.M.M.I. Inc. v. Zurich American Ins. Co.,* 84 P.3d 385, 389 (Cal. 2004).

[100] *Id.*; *see also MacKinnon v. Truck Ins. Exchange,* 73 P.3d 1205, 1213 (Cal. 2003).

[101] *Id.* at *9, n. 123 (citing and reviewing cases that utilized the "reasonable expectation doctrine").

**A. THE SETTLEMENT AND SAN ANTONIO SETTLEMENT PAYMENTS CONSTITUTE A "LOSS."**

The Settlement and the San Antonio Settlement payments constitute "Loss" under the Policies. The Insurers allege that the Settlement "does not constitute Loss to the Insureds and instead represents additional consideration that DFC and Murdock should have paid to the Stockholder Plaintiffs for the fair value of their shares of Dole in connection with the merger." The Insurers further explain that the settlements are not "Loss" because "Loss does not include any amount representing the increase in consideration paid (or proposed to be paid) by the Policyholder in connection with its purchase of any securities or assets."

The AXIS Policy, to which the Insurers' policies follow form, states:

"Loss means all monetary amounts which the Insureds become legally obligated to pay on account of a Claim, including damages, *settlement amounts* and judgments, . . . , costs and fees awarded pursuant to judgments, Defense Costs . . .

Loss does not include: ...

6. any amount representing the increase in the consideration paid (or proposed to be paid) *by the Policyholder* in connection with *its* purchase of any securities or assets;"

The Settlement is a "Loss" because the settlement payment was clearly a "Claim, including . . . settlement amounts." The Settlement does not fall within the exception for being an "increase in the consideration paid" because the settlement was paid by Mr. Murdock, not the Policyholder. Specifically, the "Policyholder" is defined as "the Parent Company and its Subsidiaries." The "Parent Company" is defined as "the company designated in Item 1 in the Declarations," which is Dole Food Company, Inc. Also, the Settlement was not paid in connection with Dole's "purchase of any securities or assets." The San Antonio Settlement was paid in part by Mr. Murdock and in part by Dole. Still, this settlement is a "Loss" because Dole did not acquire shares in connection with the merger.

19

Next, the Insurers argue that the settlement is not a "Loss" because the insured Defendants were merely paying for what they already owed. The Insurers draw an analogy for their proposition with cases where a party breached a contract and had to pay what they owed as compensatory damages. Courts found that these damages were not insurable losses.

In reply, the Defendants state that the cases that the Insurers have cited are breach of contract cases, rather than cases for breach of fiduciary duty, as is the case here. The Defendants also claim that the Insureds have not made an argument that the breach of contract cases are analogous to a case for a breach of fiduciary duty. The Defendants go on to contend that the law that applies to the definition of Loss was the law of the jurisdiction that is most favorable to the insurability as long as certain conditions are met. But here, the Insurers have not argued that the Loss is not insurable in the relevant jurisdictions.

The cases that the Insurers cited are not applicable here.[102] Both here and in the cases cited by the Insurers, the Insurers cover losses for "wrongful acts." The cases cited by the Insurers all find that a breach of contract is not a wrongful act as defined by the policy and so the Insurer does not need to indemnify the insureds. In the Memorandum Opinion, the Court of Chancery found breaches of fiduciary duties, rather than a breach of contract, which is a wrongful act under the insurance policy. The San Antonio Action claims followed form of the claims made in *In re Dole Food Company, Inc. Stockholder Litigation*. So, the payments under the two settlements are a "Loss."

The Court's determination that the payments constitute a "Loss" does not mean that issues regarding allocation and exhaustion have also been determined. The Court is merely addressing the issue of whether payments under the two settlements constitute a "Loss" for

---

[102] *August Entm't, Inc. v. Philadelphia Indem. Ins. Co*., 146 Cal.App.4th 565, 579 (2007); *Screen Actors Guild Inc. v. Fed. Ins. Co.* 957 F. Supp. 2d 1157, 1160, 1164 (C.D. Cal. 2013).

20

purposes of indemnification. If a Defendant is not an "Insured" under the Policies (or otherwise covered under the terms of the Policies), the Insurers are not indemnifying that Defendant for a "Loss."

### B. GENUINE ISSUES OF MATERIAL FACT EXIST WITH RESPECT TO THE WRITTEN CONSENT PROVISION AND THE COOPERATION CLAUSE PRECLUDING SUMMARY JUDGMENT.

As set forth more fully above, the Written Consent Provision states, "[i]nsureds shall not settle any Claim, select any defense counsel, incur any Defense Costs, admit or assume any liability, stipulate to any judgment without the Insurer's prior written consent, which shall not be unreasonably withheld, or otherwise assume any contractual obligation."[103]

Consent-to-settle provisions do not provide an insurer an absolute right to veto a reasonable settlement.[104] Rather, the main purpose of a consent provision is to protect the insurer from prejudice or a collusive settlement.[105] An insurer is not free from liability in an "absence of a showing that the breach caused the insurer to suffer prejudice."[106]

A party may demonstrate prejudice on the face of pleadings.[107] An insurer is entitled to a presumption of prejudice which an insured can rebut.[108] Generally, these types of disputes are not properly resolved on motions for summary judgment.[109] But, the Court may find a lack of prejudice on a motion for summary judgment.[110]

The Insurers have demonstrated that they did not provide prior written consent to the

---

[103] Stolle Aff., Ex. 1, End. 3.
[104] *Sun-Times Media Group, Inc. v. Royal & Sunalliance Ins. Co. of Canada*, 2007 WL 1811265, at *12 (Del. Super. June 20, 2007).
[105] *Id.*
[106] *Allstate Ins. Co. v. Fie*, 2006 WL 1520088, at *3 (Del. Super. Mar. 9, 2006).
[107] *Id.* at *4 (citing *Hall v. Allstate Ins. Co.*, 1985 WL 1137299 (Del. Super. Jan. 11, 1985)).
[108] *Id.*
[109] *Id.*
[110] *U-Haul Co. of Penn. v. Utica Mut. Ins. Co.*, 2013 WL 1726192, at *4 (D.Del. Mar. 28, 2013), *aff'd*, 565 Fed. Appx. 87 (3d Cir. 2014).

Settlement or the San Antonio Settlement. So, the burden is on the Defendants to show that the Insurers have not suffered prejudice as a result of the Defendants not getting written consent for the Settlement or the San Antonio Settlement in violation of the Written Consent Provision.

Based on the record presented to the Court in the Motions, there is a question of fact as to whether the Insurers unreasonably withheld their consent to the Settlement and the San Antonio Settlement.[111] First, the Defendants must show that they requested the Insurers' consent.[112] Then, a trier-of-fact must find that the Insurers did not have a reasonable basis for withholding their consent.[113] "It is not enough for the [ ] parties to show that the settlement offer was reasonable."[114]

The Defendants argue that the Insurers put them in an untenable position because they had to choose between settling and losing coverage or proceeding with the litigation and then potentially not being able to recover. The Defendants also note that the Settlement and the San Antonio Settlement were reasonable.

In response, the Insurers argue that the Insureds did not request their consent because the Insureds did give them enough time to assess the term sheet and offer consent. Whether the Insurers had enough time to consent and whether the Insurers placed the Insureds in an untenable position are questions of fact for the trier-of-fact to determine at trial.

The Defendants argue that the Written Consent Provision should not be applied in this civil action, arguing that a type of waiver exists.[115] The Insureds cite *Sun-Times Media Grp.,*

---

[111] *Federal Insurance Co. v. Hilco Capital, LP*, 2008 WL 3021109, at *5 (Del. Super. Aug. 5, 2008), *aff'd*, 978 A.2d 174 (Del. 2009) (While it was a legal question that the Court has determined that the insurer had a right to consent to the settlement, "it is for the jury to determine whether [insurer] unreasonably withheld its consent.").
[112] *Hilco Capital, LP v. Fed. Ins. Co.*, 978 A.2d 174, 181 (Del. 2009).
[113] *Id.*
[114] *Id.*
[115] Mr. Murdock's Mot. at 25.

22

*Inc. v. Royal & Sunalliance Ins. Co. of Canada* and *Shook v. Hertz Corp.,*[116] for the proposition that when an insurance company reserves its rights to accept coverage, it no longer has "veto power" over the insureds' ability to accept settlements.[117] The Court seriously considered this argument and pressed the parties on it at the Hearings. The Court is persuaded that *Sun-Times* is not applicable on the facts here. With respect to consent-to-settle provisions, *Sun-Times* finds that excess insurers do not need to consent to the settlement whose excess coverage is not implicated. *Shook v. Hertz Corp.,*[118] also does not apply in this case. *Shook v. Hertz Corp.* involves an insurance company that denied coverage and then asserted that the insureds had breached a consent provision. Here, the Insurers reserved their rights to accept coverage, rather than denying coverage.

Finally, the Defendants cite cases from the 9th Circuit such as *Diamond Heights Homeowners Ass'n v. Nat'l Am. Ins. Co.*,[119] and *Teleflex Med. Inc. v. Nat'l Union Fire Ins. Co.*[120] Both of these cases similarly provide,

> when a primary insurer wrongfully denies coverage, unreasonably delays processing a claim, or refuses to defend an action against the insured as required by the policy, the insured is entitled to make a reasonable settlement of the claim in good faith and then sue for reimbursement, even though the policy prohibits settlements without the consent of the insurer.[121]

In *Diamond Heights*, a California appellate court found that there were genuine issues of material fact as to whether the insurance company "was afforded a reasonable opportunity to undertake the defense prior to the settlement" where an insurance company reserved its right to accept or reject coverage before settlement.

---

[116] 349 A.2d 874, 876 (Del. Super. 1975).
[117] 2007 WL 1811265, at *13 (Del. Super. June 20, 2007).
[118] 349 A.2d 874, 876 (Del. Super. 1975).
[119] 277 Cal. App. 3d 563, 568 (1991).
[120] 851 F.3d 976, 979 (9th Cir. 2017).
[121] *Diamond Heights*, 227 Cal.App.3d at 581.

Similarly, in this case, there are genuine issues of material fact as to whether the Insurers had a reasonable opportunity to participate before settlement. The Court, therefore, cannot enter summary judgment as to the Written Consent Provision.

The Cooperation Clause states: "Insureds shall provide the Insurer with all information, assistance and cooperation which the Insurer reasonably requests and shall do nothing that may prejudice the Insurer's potential or actual rights of recovery with respect to Loss paid on account of a Claim."[122]

Cooperation clauses are "material to the insurance contract and a substantial breach of the provision by the insured provides a legitimate defense to the insurer if factually proven."[123] Cooperation clauses are meant to "prevent collusion between the insured and the inured party and to allow the insurer an opportunity to conduct a reasonable investigation of the underlying claim."[124] If the insured failed to cooperate with the insurer, then the insurer may raise "noncooperation as a defense to liability for coverage above the statutory minimum."[125]

In *E.I. du Pont de Nemours & Co. v. Admiral Ins. Co.*, the insurers sought summary judgment against the insured for failing to abide by the assistance and cooperation provision.[126] The insurers argued that the insured failed to provide information requested under the clause.[127] The insured also contended that the insurers failed to actively become involved in the case.[128] The Court determined that insurers do not need to show prejudice, but prejudice may be a factor

---

[122] Stolle Aff., Ex. 1, End. 3.
[123] *Harris v. Prudential Prop. & Cas. Ins., Co.*, 632 A.2d 1380, 1382 (Del. 1993); *see also E.I. du Pont de Nemours & Co. v. Admiral Ins. Co.*, 1995 WL 654010, at *8 (Del. Super. Oct. 27, 1995) (stating that "Delaware Courts have not required a showing of prejudice as a result of a breach of an assistance and cooperation clause. However, . . . prejudice may have a bearing on the materiality of the breach.").
[124] *Id.*
[125] *Id.* at 1383.
[126] 1995 WL 654010, at *8.
[127] *Id.* at *9.
[128] *Id.* at *9-10.

24

bearing on the materiality of the breach.[129]  The Court held that the issue was not ripe for summary judgment because issues of material fact remained.[130]  That record created a material issue of fact and precluded summary judgment.[131]

The Defendants argue that the Insurers "neither associated in the defense of these lawsuits nor accepted coverage."[132]  Moreover, the Defendants state that the Insurers never reserved their rights to deny coverage or failed to respond to the Insureds' notice relating to the San Antonio Action.[133]  Because the Insurers failed to take timely action, the Defendants contend that they were permitted to make reasonable decisions to defend themselves.[134]  The Insurers argue that the Defendants breached the Cooperation Clause.  The Insurers admit that the Defendants advised the Insurers about the discussions to settle the *Stockholder* Action, but then negotiated the Term Sheet without the Insurers' participation.

There appears to be a material issue of fact of whether there was a substantial breach of the cooperation provision.  The Defendants do not seem to dispute that they refused requests to provide basic information about the settlement discussions.  But, the Defendants claim that the documents that they did not produce were covered by attorney-client privilege or the work product doctrine or were unreasonably requested.  Courts have found that insureds do not waive attorney-client privilege by agreeing to cooperate with insurers.[135]  The Insurers argue that these cases only apply to coverage disputes.  In this case, the Insurers originally requested the

---

[129] *Id.*
[130] *Id.* at *10.
[131] *Id.* at *10.
[132] *Arch Ins. Co. v. Murdock*, 2018 WL 1129110, at *14 (Del. Super. Mar. 1, 2018).
[133] *Id.* at 35.
[134] *Id.*
[135] *Bituminous Cas. Corp. v. Tonka Corp.*, 140 F.R.D. 381, 386 (D. Minn. 1992) ("This court rejects the conclusion that because an insured agrees to cooperate with the insurance company, in the event he is sued or otherwise makes a claim under the policy, that the insured has thereby forever contractually waived the attorney-client privilege."); *Remington Arms Co. v. Liberty Mut. Ins. Co.*, 142 F.R.D. 408, 416–17 (D. Del. 1992) (applies Connecticut law and does a survey of other states which also follow the same rule).

information in order to determine whether to indemnify the Insureds, which is a coverage dispute. Both parties argue that they offered to set up an agreement through which the Insureds would not waive their privilege in the requested documents, but the other party did not accept. The parties also argue about the scope of the information that the Insurers requested and whether the Insurers production requests were reasonable. So, there are genuine issues of material fact that remain.

The Defendants also argue that the cooperation clause does not apply in this case. The Defendants rely upon *United Service Auto. Ass'n v. Morris,*[136] in which an Arizona court performed a review of cases in other jurisdictions and found that an insured has a right to reach a settlement without the consent of the Insurer in violation of a cooperation provision when an insurer has not agreed to cover a dispute. The court there held that the burden shifts to the insured to show that the settlement is fair and reasonable under the circumstances and not fraudulent or coercive.

Generally, whether a settlement is fair and reasonable raises a genuine issue of material fact.[137] The Court considered and reviewed whether the Insurers' failure to intervene or otherwise object to the Settlement or the San Antonio Settlement somehow precluded the Insurers from litigating the reasonableness of those settlements. Upon review of how various courts have handled Civil Rule 23 settlements, the Court determined too many variables exist regarding whether a court would allow the Insurers to intervene so as to allow the Court to make a determination that estoppel (or preclusion) applies on this issue. The Court will consider how

---

[136] 154 Ariz. 113 (1987).
[137] *Sun-Times Media Group, Inc. v. Royal & Sunalliance Ins. Co. of Canada*, 2007 WL 1811265, at *12 (Del. Super. June 20, 2007).

to present the issue to the jury in pre-trial proceedings.  As with the Written Consent Provision, the Court will not grant summary judgment as to the Cooperation Clause.

## VI. CONCLUSION

For the reasons set forth above and in the Counterclaim 3 Order, the Court **GRANTS** in part and **DENIES** in part the Motions.

**IT IS SO ORDERED.**

*/s/ Eric M. Davis*
Eric M. Davis, Judge